United States District Court
Southern District of Texas
**ENTERED**
September 02, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CHARLES MORAN, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | C.A. NO.: 4:21-cv-04214 |
| | § | |
| SIGNET MARITIME CORPORATION, | § | |
| *Defendant.* | § | |

**JURY INSTRUCTIONS**

**MEMBERS OF THE JURY:**

You have heard all of the evidence in this case. I will now instruct you on the law you are to apply in reaching your decisions and answering the questions submitted to you in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

I will first give you general instructions that apply in many cases, including this one. Then I will give you more specific instructions that apply to this case in particular. Finally, I will give you instructions about deliberating to a verdict.

**General Instructions**

Consider these instructions as a whole in context. Do not consider any instruction to be more important than others, and do not take any instruction out of context. Your duty as jurors is to follow the law that I give you in these instructions. You, the jurors, are the sole finders of fact. But in finding those facts, you must apply the law as I give it to you in these instructions, regardless of any opinion you may have as to what the law ought to be. If I have given you the impression

during the trial that I favor either party or that I have an opinion about the facts of this case you must disregard that impression.

All parties are equals before the law and must be treated as equals before the law in a court of justice. Your duty is to make fair impartial decisions based only on the evidence and law presented to you here. Our system does not permit jurors to be influenced by bias, prejudice, sympathy, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as it is given to you, and reach a just verdict, regardless of the consequences.

The verdict form, which I will explain in detail later, tells you to answer specific questions about the factual disputes in the case. Base your answers on the facts as you find them. Do not first decide who you think should win then answer questions accordingly.

The evidence for you to consider consists of the witnesses' testimony and the exhibits that I have admitted into evidence. You may consider fair inferences you choose to draw from the facts you find to be proven. Lawyer statements and argument are not evidence and are not instructions on the law. Although what the lawyers say is not evidence, you may consider their statements and arguments in the light of the evidence and determine whether it supports the argument.

Juror notes taken during a trial are not evidence. They are only aids to a juror's memory of the evidence. If you took notes and your memory of the evidence differs from your notes, rely on your memory and not the notes. If you did not take notes, rely on your own independent memory of the evidence and do not be unduly influenced by any other juror's notes.

Your factual findings and your answers to the questions you are asked must be based on a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. To establish a fact by a preponderance of the evidence means to prove that fact is more

likely true than not true. In determining whether a fact has been proven by a preponderance of the evidence, you may consider all of the evidence, regardless of which party brought it to you.

Facts may be proven by direct evidence, such as testimony of an eyewitnesses. Facts may also be proven by indirect or circumstantial evidence, which is evidence that proves a fact from which you can logically conclude that another fact exists. Consider both direct and circumstantial evidence in finding the facts and arriving at your answers from all the evidence.

Some documents were shown to you as an illustration. These documents are a party's description, picture, or model used to describe something involved in this trial. If your recollection of the evidence differs from such documents, rely on your recollection.

Witness credibility and truthfulness is for you to decide. In determining credibility, you may consider a wide range of factors, including each witness's demeanor, the consistency or inconsistency of the witness's answers to questions, and the witness's feelings, prejudices, or biases. In determining the weight to give a witness's testimony, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at trial. A simple mistake by a witness does not mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

Do not decide this case by counting the number of witnesses who have testified about a fact. The testimony of a single witness is sufficient to prove any fact, if after considering all of the other evidence, you believe that witness.

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## Specific Instructions

### Instructions on the Nature of the Case

On September 29, 2021, Charles Moran was working as a boat captain of a tugboat for Signet Maritime Corporation. He was scheduled to start work on September 29, but Signet's Port Captain told him that the vessel's departure was delayed because of weather. Captain Moran went to get his hair cut. He also claims he intended to purchase supplies for the boat at a grocery store after he got his hair cut. Captain Moran fell in the parking lot of the hair salon, fracturing his ankle. One of the issues in this case is where Captain Moran was when he talked to the Port Captain, and another issue is whether he was in the service of the vessel when he fell. Captain Moran asserts that he was at work because he had reported to the vessel before he went to get his hair cut. Signet Maritime asserts that Captain Moran had not yet begun work and did not break his ankle while he was in the service of the vessel.

Captain Moran claims that, because he was in the service of the vessel and subject to the call of the vessel when he fell, he is entitled to maintenance and cure – a kind of worker's compensation – and unearned wages for his injuries as a result of the fall. Signet Maritime claims that Captain Moran was on his own time and not in the service of the vessel when he fell, and is

not entitled to these payments. Signet Maritime also asserts that although Captain Moran fell in September 2021, he did not request maintenance and cure or unpaid wages until after he was fired in October 2021.

Captain Moran alleges that Signet Maritime fired him to avoid paying maintenance and cure. Signet Maritime asserts that it fired Captain Moran after the vessel on which he was serving as captain allided with a wall on one of the floodgates on the Brazos River on August 20, 2021.

Captain Moran asserts that a malfunction on his vessel caused or contributed to the allision. Captain Moran asserts that if he did not take both barges through the floodgates when he did, it would have resulted in a two-day delay, and that there was no place to tie up one barge while taking the other through the floodgates. Captain Moran asserts that, while Signet Maritime had a policy forbidding two barges to go through the river floodgates at once, Signet's policy allowed deviations when approved in advance by the Port Captain. Captain Moran asserts that he got permission from his Port Captain to take two barges through the floodgate. Signet Maritime denies that such permission was given.

Signet Maritime disputes Captain Moran's account and asserts that its investigation showed that the allision was Captain Moran's fault, and that he did not follow the company policy that only one barge at a time could go through the floodgates.

On October 12, 2021, Signet Maritime learned that it had to pay $115,749.56 to repair the damaged floodgate. On October 13, 2021, Signet Maritime fired Captain Moran and told him it was because of the August 20 allision. Signet Maritime asserts that Captain Moran's performance was unacceptable before his employment was terminated, including because – Signet says – Moran was late completing work logs, inaccurately completed work logs, and had issues managing crew.

Captain Moran contends that Signet Maritime fired him to avoid its obligation to pay maintenance and cure. Captain Moran contends that Signet used the August 20, 2022 allision as its excuse for his termination. Captain Moran contends that his termination was wrongful.

Signet Maritime asserts that it terminated Captain Moran because of the allision, not to avoid maintenance and cure. Signet Maritime asserts that when it terminated Captain Moran, he had not asked for the payments of maintenance and cure or wages. Signet Maritime continues to assert that Captain Moran is not entitled to maintenance and cure for his fall on September 29, 2021, because he was not in the service of the vessel at the time of his fall.

**Instruction on Jury Question No. 1**

You are asked in Jury Question Number 1 whether Captain Moran has proven by a preponderance of the evidence that he was in the service of the vessel when he fell in the Diva's Hair Salon parking lot.

You are instructed that a seaman such as Captain Moran is "in the service of the vessel" when it is clear that he was performing work directly or indirectly benefiting his employer. A seaman may also be found to be in the service of the vessel even if he is on land on his own personal time if he is subject to the call of duty as a seaman and is entitled to be paid wages as such. Being subject to the call of duty means that the seaman is under binding obligations to serve his employer and report to the vessel when ordered.

**Instruction on Jury Question No. 2**

You are asked in Jury Question Number 2 whether Captain Moran has proven by a preponderance of the evidence that he was wrongfully terminated by Signet Corporation.

You are instructed that a maritime employer may discharge a seaman for good cause, for no cause, or even a morally reprehensible cause. It is, however, a tort for a maritime employer to

discharge a seaman in retaliation for the seaman's exercise of his legal right to file a personal injury action against his employer.

**Final Instructions on Deliberation and Verdict**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom. Your verdict must represent the considered judgment of each juror. A verdict form has been prepared for your convenience. The form has space for your answers to the specific jury questions. You will take the verdict form to the jury room. When you have reached an agreement as to your unanimous answer to each of the questions, your foreperson will fill the answers in on the verdict form, sign and date it, and the jury will return to the courtroom. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

SIGNED on September 1, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge