United States District Court
Southern District of Texas
**ENTERED**
October 29, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES MORAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-4214 |
| | § | |
| SIGNET MARITIME CORPORATION and SIGNET MARITIME SERVICES, INC., | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Captain Charles Moran, a seaman, fell and fractured his foot and ankle on September 29, 2021. The parties agreed to bifurcate the trial of Captain Moran's claims: trying liability to a jury and then, if the jury found in favor of Captain Moran, trying damages to the bench.

In the first phase of the bifurcated trial, the jury found that Moran was injured while in the service of a Signet vessel, making Signet liable for maintenance and cure. At the time of the accident until days before the jury trial, the only injury Moran claimed was a foot and ankle injury sustained when he tripped and fell in a parking lot on his way to get his hair cut before beginning a month long "hitch." Moran now seeks to recover maintenance and cure not only for his foot and ankle injury, but also for neck and back injuries he contends are related to the same fall or were otherwise incurred in the service of the vessel.

Signet argues that the court may award maintenance and cure benefits only for the foot and ankle injury that Moran reported to Signet after his fall on September 29, 2021, and that he claimed up until a few days before the jury trial. Signet emphasizes that Moran first complained of a back injury, in addition to his foot and ankle injury, on August 25, 2022, only a few days before the jury trial on liability. (*See* Docket Entry No. 105-1). Signet argues that the maintenance and cure

benefits it owes Moran must be limited to benefits for the injuries that were "temporally connected" to Moran's fall on September 29, 2021. (Docket Entry No. 105 at 2). Signet argues that Moran first sought benefits for additional back and neck injuries too long after the fall to have those injuries be the basis of maintenance and cure benefits. (*Id.* at 2–3). To the extent Moran seeks benefits for the long-term effects of his fall, Signet argues that maintenance and cure benefits terminate when maximum medical cure is reached or when the condition for which benefits are awarded stabilizes or cannot further improve. (*Id.* at 3). Signet emphasizes that it still has not received a report from Moran's retained expert, Dr. Aaron Wolfson, a life-care planner. (*Id.* at 4).

Moran responds by emphasizing the "liberal" nature of maintenance and cure benefits. (Docket Entry No. 104 at 2). Moran argues that covered injuries include those not discovered until after, but which occurred during, the time of the seaman's service. (*Id.* at 4–5). Moran argues that because the critical point is the timing of the injury, not the timing of the symptoms, he is entitled to recover for the effects of the fall that occurred in the service of the vessel, even if they manifested long after the fall. (*Id.* at 5).

The case law supports the argument that the time of the injury, not of the symptoms, determines maintenance and cure benefits. In *Ramirez*, the court stated that the proper inquiry is whether the illness or injury "beg[a]n or become[s] aggravated" while the seaman was in the service of the vessel. *Ramirez v. Carolina Dream, Inc.*, 760 F.3d 119, 124 (1st Cir. 2014) (citing *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001)). *Ramirez* is consistent with the cases Moran cites. *See Messier v. Bouchard Transp.*, 688 F.3d 78, 84 (2d Cir. 2012), *as amended* (Aug. 15, 2012) ("This well-established rule does not permit an exception for asymptomatic diseases—so long as the illness occurred or became aggravated during the seaman's service, he is entitled to maintenance and cure.").

*Semien* is likewise consistent with Moran's argument. The court in *Semien* noted that the employer's "obligation to provide maintenance and cure does not depend on [whether the injury] . . . ar[ose] from the incident." *Semien v. Parker Drilling Offshore Corp.*, No. 14-cv-1087, 2016 WL 112727, at *6 (W.D. La. Jan. 8, 2016). Rather, the issue is whether the illness or injury occurred "while [the seaman was] in the service of the vessel." *Id.* The *Semien* court held that the plaintiff could not recover for his depression or insomnia because there was no evidence from which the factfinder could conclude that the conditions arose while he was in the service of the vessel. *Semien* did not hold or imply, as Signet argues, that recovery was precluded because the conditions were discovered months after the initial injury. (Docket Entry No. 105 at 2).

Moran argues that any injuries occurring during the maintenance and cure period are injuries sustained in the service of the vessel. Moran relies on *Cawley v. United States*, 272 F.2d 443, 445 (2d Cir. 1959), but in *Cawley*, the question was not the payment of benefits, but rather whether time during the period of cure spent in a foreign hospital should be counted as time spent in the service of a United States vessel for the purpose of determining constructive residence in the United States under 8 U.S.C. § 1441. Moran also points to *Duarte v. Royal Caribbean Cruises, Ltd.*, 761 So. 2d 367 (Fla. Dist. Ct. App. 2000), a decision from the Florida District Court of Appeal, for the proposition that injuries sustained during the cure period are also in service of the vessel. While *Duarte* supports Moran's expansive position, *id.* at 368, *Gauthier*, also cited by Moran, provides a more limited rule. In *Gauthier*, a seaman was hospitalized for a condition for which the employer was liable for maintenance and cure. The seaman contracted hepatitis in the hospital. The court held that the employer was not liable for treatment of the hepatitis because it was "totally divorced from plaintiff's service [for the employer]." *Gauthier v. Crosby Marine*

*Serv., Inc.*, 499 F. Supp. 295, 300 (E.D. La. 1980), *on reconsideration of separate issue*, 536 F. Supp. 269 (E.D. La. 1982), *aff'd*, 752 F.2d 1085 (5th Cir. 1985).

Moran's claim for maintenance and cure benefits was limited to the ankle injury sustained in his fall. Until days before the jury trial, Moran did not claim entitlement to benefits for any other illness or injury that occurred after his fall and, until his most recent brief, he did not argue that such illness or injury should be covered because it occurred during the cure period itself. The jury found that Moran was in the service of the vessel when he fell in September 2021. It did not consider whether Moran was in the service of a Signet vessel at any other time, including when he was diagnosed with cancer. The jury had no occasion to consider whether that diagnosis was for a condition that arose during his service to the vessel. The court's consideration of maintenance and cure benefits in this case is limited to those benefits relating to conditions arising from or aggravated by the fall. The scope of the jury's finding precludes evidence in this proceeding from the oncologist, Dr. Gordon Wadge, as to a cancer diagnosis made after, and which is unrelated to, the September 2021 fall.

The court will allow testimony with respect to Moran's foot and ankle injuries, and other injuries that may have been caused or aggravated by his September 2021 fall. Moran provides the names of no fewer than seven doctors who may provide testimony related to those injuries: Drs. Kindl, Calegan, Oberlander, Grieshaber, Edge, Rodriguez, and Montgomery. (Docket Entry No. 104-1 at 4–6). During the October 13, 2022, pretrial conference, Moran identified among these names only Drs. Kindl, Calegan, Oberlander, and Grieshaber as potential witnesses. At that conference, Signet indicated it was not disputing the admissibility of the testimony of Drs. Kindl or Calegan. The disputed testimony is that of Dr. Oberlander, an orthopedic spine surgeon who has treated Moran, and of Dr. Grieshaber, a pain management specialist who "may testify about

Plaintiff's foot/ankle and lumbar injuries, mechanism of injury, the reasonable and necessary medical treatment provided, the reasonable and necessary medical expenses incurred or expected by Plaintiff, any future restrictions or limitations of Plaintiff, and/or future medical care required and its estimated costs." (*Id.* at 5).

The proposed testimony from Dr. Grieshaber appears substantially duplicative of the testimony that will be offered by Drs. Kindl, Calegan, and Oberlander. At the pretrial conference, counsel for Moran stressed that Dr. Grieshaber's evaluation of Moran would inform how he would be treated by Drs. Kindl and Oberlander. There does not appear to be a need to hear testimony from Dr. Grieshaber himself, in addition to testimony from Drs. Kindl and Oberlander.

The court will therefore allow the testimony of Drs. Kindl, Calegan, and Oberlander. Although Dr. Oberlander was identified late in this process, any delay appears related to the pace of medical diagnoses and treatment itself, rather than bad faith or neglect by Moran. The court allowed sufficient time for Signet to obtain discovery from these treating doctors, avoiding undue prejudice from the late designations.

Signet argues that Dr. Wolfson should not be allowed to testify because, less than a week before the scheduled bench trial, he still has not provided a report, as required by the rules. Signet also argues—implicitly—that the subject of Dr. Woodson's testimony is not relevant to the issue of cure, because cure benefits extend only to the time of maximum medical improvement. (Docket Entry No. 105 at 3). Moran indicates that Dr. Wolfson will testify "as to the vocational assessment of Capt. Moran's current and future employment potential, rehabilitation planning, and future life care planning strategies." (Docket Entry No. 104-1 at 6). Cure benefits do not extend beyond the payment of medical expenses incurred in treating the illness or injury. Cure benefits do not turn on Moran's future employment potential or other factors occurring after he has reached maximum

5

medical improvement.  *See* 1 *Admiralty & Mar. Law* § 6:33 (6th ed.).  Maintenance benefits similarly terminate at the point of maximum medical improvement.  *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1170 (5th Cir. 1982) ("[T]he cutoff point for maintenance and cure is not the time at which the seaman recovers sufficiently to return to his old job but rather is the time of maximum possible cure.").

The court excludes Dr. Wolfson's testimony as irrelevant.  The court will permit the testimony of Drs. Kindl, Calegan, and Oberlander.

SIGNED on October 29, 2022, at Houston, Texas.

                                                                              Lee H. Rosenthal
                                                                              Chief United States District Judge